## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JOSEPH JINGOLI & SON, INC,

Plaintiff,

v.

ERICA L. BEAL,

Defendant.

Civil Action No. 23-21364 (RK) (TJB)

**MEMORANDUM ORDER**

**KIRSCH, District Judge**

      **THIS MATTER** comes before the Court upon Plaintiff Joseph Jingoli & Son, Inc.'s ("Jingoli" or "Plaintiff") Motion for a Preliminary Injunction. ("ECF No. 9.") Plaintiff seeks an order restraining Defendant Erica L. Beal ("Beal" or "Defendant") from "any and all conduct aimed at disrupting or harming the business interests of Jingoli and its affiliate companies, including but not limited to preventing Beal from further disseminations of her California Civil Complaint and application for a Civil TRO, or similar communications, to Jingoli's clients and/or business partners" and "any other such relief as the Court deems equitable and just." (ECF No. 9 at 1.) Defendant filed a brief in opposition, ("Opp'n," ECF Nos. 10 and 11), to which Plaintiff replied, ("Reply," ECF No. 12.) The Court has considered the parties' submissions and heard oral argument on December 14, 2023. For the reasons set forth below, Plaintiff's motion is **DENIED**.

## I.   BACKGROUND AND PROCEDURAL HISTORY

This action concerns a business partnership gone wrong. So wrong, in fact, that Plaintiff, Defendant, Plaintiff's subsidiary company — Jingoli Power ("JPOW") — and JPOW's CEO are ensnarled in five legal proceedings against each other across the country.[1]

Plaintiff is a New Jersey "company that is engaged in the businesses of power/energy, economic development, healthcare, gaming, education, and industrial/manufacturing." ("Mot.," ECF No. 9-1 at 2.) It is also the parent company of Jingoli Power, Inc. ("JPOW"), a New Jersey company "that assists clients with complex electrical transmission, distribution/substation projects, and programs." (*Id.*) Karl Miller is the CEO of JPOW, but is not an employee of Jingoli. (*Id.* at 2–3.)

In September of 2019, Defendant and JPOW formed AVIVV, LLC ("AVIVV"), "a two-member New Jersey limited liability company." (*Id.* at 3.) Defendant owns approximately 51% of AVIVV, while JPOW owns approximately 49%. (ECF No. 1., Ex. A at 10.) According to Plaintiff, this business venture soured due to "multiple breaches of the AVIVV Operating Agreement" by Defendant. (Mot. at 3.) In June 2023, the parties began arbitration before the American Arbitration Association to dissolve the company. (*Id.*)

Around this same time, Defendant, in order "to bolster her position in the arbitration . . . began making false, misleading and unsubstantiated claims against Jingoli and JPOW executives," including, *inter alia*, "bullying, retaliation, fraud . . . and 'debt bondage.'" (*Id.* at 3.) On August 8,

---

[1] Aside from this matter, the other four proceedings are:
- An arbitration before the American Arbitration Association; filed in June 2023 by JPOW.
- *Beal v. Miller*, No. 37-2023-00033655-CU-HR-CTL in the Superior Court of California; filed August 8, 2023 and dismissed with prejudice.
- *Beal v. Miller, Jingoli Power LLC and Eckert Seamans*, No. 37-2023-00040151-CU-FR-CTL in the Superior Court of California; filed September 15, 2023.
- *Jingoli Power LLC v. Beal et al.*, 37-2023-00047888-CU-BT-CTL in the Superior Court of California; filed November 2, 2023.

2023, Beal requested a Temporary Restraining Order against Miller in California Superior Court, which she later voluntarily dismissed. (*Id.* at 4.) On September 15, 2023, Defendant filed suit against JPOW and Miller in California state court, alleging claims of sexual harassment, failure to prevent sexual harassment, negligent supervision, unlawful retaliation, intentional infliction of emotional distress, sexual battery, sexual assault, fraud, and breach of contract. (*Id.*)

Thereafter, on October 7, 2023, Plaintiff alleges Defendant, from the anonymous email address "justice4womenofcolor@gmail.com, sent two emails to "clients and/or business partners of Jingoli." (*Id.*) The first email, sent to Devco, a client of Jingoli's, attached Defendant's California lawsuit against JPOW, and stated, in the body of the email: "JINGOLI POWER ALLEDGEDLY [sic] DAMAGES MINORITIES, WOMEN OF COLOR, MILITARY VETERANS, AND THE ELDERLY IN THE FORM OF HARRASSMENT [sic] EXPLOITATION, SEXUAL ASSAULT, FRAUD, & DEBT BONDAGE." (*Id.* 6–7.) The second email, sent to the International Brotherhood of Electrical Workers ("IBEW"), a union with whom Jingoli works, attached Defendant's TRO request against Miller and stated: "Public record Temporary Restraining Order approved by the judge/court. Extended until Oct. 23." (*Id.* at 6–7.) Plaintiff contends that its investigation into the email address "has established a very high degree of confidence that the anonymous email address . . . belongs to Beal." (*Id.* at 7–8.)

Plaintiff filed an Order to Show Cause with Temporary Restraints and Complaint in New Jersey state court on October 16, 2023. (*See* ECF No. 1.) Defendant was ordered by the state court to respond by October 20, 2023 but, prior to responding, removed the case to this Court. Plaintiff brings claims for (1) tortious interference with contract; (2) tortious interference with prospective economic advantage; and (3) defamation. (*Id.*) On November 16, 2023, Plaintiff moved for a

preliminary injunction. (ECF No. 9.) The preliminary injunction has been fully briefed and is now ripe before the Court.

## II.   <u>LEGAL STANDARD</u>

Under Federal Rule of Civil Procedure 65, a district court may issue a preliminary injunction or a temporary restraining order. Fed. R. Civ. P. 65. These are "'extraordinary remed[ies]' that 'should be granted only in limited circumstances.'" *Golden Fortune Imp. & Exp. Corp. v. Mei-Xin Ltd.*, No. 22-1710, 2022 WL 3536494, at *2 (3d Cir. Aug. 5, 2022) (quoting *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004)). The movant bears the burden of showing its entitlement to an injunction. *See Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (citing *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990)). In determining whether to grant a motion for preliminary injunctive relief, the Court considers four factors: (1) whether the movant has shown "a reasonable probability of eventual success in the litigation"; (2) whether the movant "will be irreparably injured . . . if relief is not granted"; (3) "the possibility of harm to other interested persons from the grant or denial of the injunction"; and (4) whether granting the preliminary relief will be in "the public interest." *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017) (quoting *Del. River Port Auth. v. Transamerican Trailer Transp., Inc.*, 501 F.2d 917, 919-20 (3d Cir. 1974)). "The 'failure to establish any element . . . renders a preliminary injunction inappropriate.'" *Ferring Pharms.*, 765 F.3d at 210 (quoting *NutraSweet Co. v. Vit–Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999)).

## III.   <u>DISCUSSION</u>

The Court's analysis begins and ends with irreparable harm. *See Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir. 1989) (noting that "irreparable injury must be

present . . . and a failure to show a likelihood of success or a failure to demonstrate irreparable injury must necessarily result in the denial" of the temporary restraining order (citations and quotation marks omitted)). The movant must make "a 'clear showing of immediate irreparable injury,' or a 'presently existing actual threat.'" *Golden Fortune*, 2022 WL 3536494, at *5 (quoting *Acierno v. New Castle Cnty.*, 40 F.3d 645, 655 (3d Cir. 1994)). The "*risk* of irreparable harm is not enough." *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987) (emphasis added). Courts within this District routinely deny preliminary injunction motions where plaintiffs fail to carry their burden to demonstrate the likelihood of irreparable injury. *See, e.g. Brandywine Prod. Grp. Int'l v. Universal Distribution Ctr. LLC*, No. 16-2248, 2016 WL 5402744, at *3 (D.N.J. Sept. 27, 2016) (finding no irreparable injury because the "Court has little factual record on which to rule that irreparable harm to [movant's] place in the market is likely and imminent"); *Ferring Pharms. Inc. v. Watson Pharms.*, No. 12-5824, 2013 WL 1405226, at *5 (D.N.J. Apr. 4, 2013) (finding no irreparable injury because the movant had "not alleged facts sufficient to prove that it was harmed, or that the alleged harm was irreparable and could only be cured by a preliminary injunction"), *aff'd sub nom.,* 765 F.3d 205 (3d Cir. 2014); *Gentile v. Sec. & Exch. Comm'n*, No. 19-5155, 2019 WL 1091068, at *3 (D.N.J. Mar. 8, 2019) (finding no irreparable injury because the movant had not "not sufficiently explained why any financial harm associated with lost business caused by continued SEC investigation could not be quantified in the future"). "Injunctions will not be issued merely to allay the fears and apprehensions or to soothe the anxieties of the parties." *Cont'l Grp.*, 614 F.2d at 359.

An irreparable injury is one "which cannot be redressed by a legal or an equitable remedy following trial." *Air Freight Co.*, 882 F.2d at 801. As such, an injury seeking monetary damages does not qualify as irreparable harm. *See Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847

F.2d 100, 102 (3d Cir. 1988) ("The availability of adequate monetary damages belies a claim of irreparable injury."); *Checker Cab of Philadelphia Inc. v. Uber Techs., Inc.*, 643 F. App'x 229, 232 (3d Cir. 2016) ("Accordingly, it is clear that this Court has long held that an injury measured in solely monetary terms cannot constitute irreparable harm." (citations and quotation marks omitted)).

The "loss of potential business opportunities, profits, customers, or contracts is compensable by money damages and does not constitute irreparable injury." *Apollo Tech. Corp. v. Centrosphere Indus. Corp.*, 805 F. Supp. 1157, 1209 (D.N.J. 1992) (citing *Instant Air Freight*, 882 F.2d at 801; *Frank's GMC*, 847 F.2d at 102; *In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1141 (3d Cir. 1982)). Courts have applied this principle to find no irreparable harm "even when an action will result in the destruction of a business" if the loss is "capable of ascertainment and award at final judgment." *Figueroa v. Precision Surgical, Inc.*, No. 10–4449, 2011 WL 1368778, at *5 (3d. Cir. Apr. 12, 2011); *see also Levine v. BlockFi Inc.*, No. 21-11934, 2021 WL 3508831, at *2 (D.N.J. Aug. 9, 2021) (discussing *Figueroa*).

To the extent Plaintiffs also allege irreparable harm from their inability to fulfill contracts with their customers, the Third Circuit has recognized that the "loss of control of reputation, loss of trade, and loss of goodwill" may constitute irreparable harm in some contexts. *See Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998) (citing *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 195 (3d Cir. 1990)). However, in that case the movant must offer "evidence that the moving party has not been able to perform on contracts with third parties because of the loss, or for it to point to a loss of goodwill or reputation with specific customers." *Golden Fortune*, 2022 WL 3536494, at *7 (citing *Bennington Foods LLC*, 528 F.3d at 179).

6

In the case at bar, Plaintiff has failed to demonstrate irreparable harm. Plaintiff has made no showing of immediate, let alone any, injury as required under the law. *Golden Fortune*, 2022 WL 3536494, at *5. Plaintiff's own briefing illustrates the speculative nature of the potential harm, noting, "*If* Beal continues to send defamatory communications to Jingoli's clients and business partners, further damage will undoubtedly result." (Mot. at 22 (emphasis added).) Moreover, Plaintiff admitted on the record at oral argument that no additional emails have been sent from the anonymous email address since October 7, 2023. Plaintiff has made no showing, nor has conveyed a belief, that any additional emails will be sent.

Plaintiff speculates that grave harm may befall its business, thus putting the company at risk. (Mot. at 22.) However, as Plaintiff stated at oral argument, Plaintiff became aware of the emails at issue from the recipients, who had reached out to Jingoli to ensure it was aware of the conduct. Devco and the IBEW did not threaten to cancel any contracts with Plaintiff. In fact, these clients demonstrated their loyalty to Plaintiff by alerting Plaintiff of the emails. Plaintiff fails to show any material risk to its business based on these emails.

Finally, while Plaintiff alleges it may suffer "irreparable harm and damage to Jingoli's good name and long-established business reputation," (Mot. at 22), "the destruction of a business," is not irreparable so long as the damages are quantifiable. *BlockFi, Inc.*, 2021 WL 3508831, at *2 (citations and quotation marks omitted); *see also Delco LLC v. Giant of Maryland, LLC*, No. 07-3522, 2007 WL 3307018, at *19 (D.N.J. Nov. 8, 2007) (holding that "anticipated injuries . . . tied exclusively to money, time and energy . . . are precisely the sort of injuries that can be satisfactorily compensated after trial" (citations and quotation marks omitted)). Plaintiff has not demonstrated that any potential losses, such as to longstanding contracts, has occurred. And even if they had, they have failed to demonstrate that the monetary value of these contracts cannot be ascertained.

As such, any harm from purportedly lost contracts may be awarded at trial, and thus the harm is not irreparable.

Accordingly, as Plaintiff has not demonstrated an irreparable injury, its motion for a preliminary injunction fails.[2]

---

[2] While the Court denies Plaintiff's motion, the serious allegations of the Complaint are not lost on the Court. According to Plaintiff, the limited discovery that it has conducted has revealed that Defendant is in fact behind the emails at issue, an assertion which Defendant has repeatedly disavowed, including in sworn court filings. Moreover, the emails contain references to "debt-bondage," a term absent from the California legal filings, but to which the Court notes is contained in emails previously sent from Beal to Jingoli and JPOW. The Court will have the opportunity to consider Plaintiff's claims as the case proceeds.

**CONCLUSION**

For the reasons set forth above, and for good cause shown,

**IT IS** on this 26ᵗʰ day of December, 2023,

**ORDERED** that Plaintiff's motion for a preliminary injunction (ECF No. 9) is hereby **DENIED**.

_____

**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: December 26, 2023

9