[ECF No. 57]

# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| **JINGOLI & SON, INC.,**<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>**ERICA L. BEAL, et al.,**<br><br>　　　　　Defendants. | Civil No. 23-21364 (ESK/EAP) |

## MEMORANDUM OPINION

This matter comes before the Court by way of *pro se* Defendant Erica L. Beal's Motion to Quash, Exclude Evidence, Disqualify Counsel, and Request Sanctions, ECF No. 57 ("Def.'s Motion"). The Court has reviewed Defendant's brief in support of her Motion, ECF No. 57-1 ("Def.'s Brief"); Plaintiff Joseph Jingoli & Sons Inc.'s opposition, ECF No. 59 ("Pl.'s Opp."); and Defendant's reply, ECF No 60 ("Def.'s Reply"). The Court has also reviewed Defendant's motion seeking permission to file a sur-reply[1] and the sur-reply itself, ECF No. 89 ("Def.'s Sur-reply"), and Plaintiff's letter supplement in response to the Court's inquiry. ECF No. 116 ("Pl.'s Letter"). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1. For the reasons that follow, Defendant's Motion is **DENIED WITHOUT PREJUDICE**.

---

[1] The Court has granted Plaintiff's separate motion to file a sur-reply in connection with the present motion. *See* ECF No. 89. The Court has issued a separate order on that motion. *See* ECF No. 122.

## FACTUAL HISTORY

The facts underlying this case are complicated and involve litigation and arbitration in multiple jurisdictions. Because not all facts are immediately pertinent or necessary to the resolution of this matter, the Court summarizes only the relevant facts.

A. **The AVIVV Arbitration**

In September 2019, Defendant Beal and non-party Jingoli Power, LLC ("JPOW") formed AVIVV, LLC ("AVIVV"), a two-member New Jersey limited liability company. ECF No. 33 ("Am. Compl.") ¶ 16. Beal and JPOW formed AVIVV to "provide project execution services for private and public utility projects, specifically electric transmission, substation, and distribution projects." *Id.* ¶ 17. JPOW, a New Jersey limited liability company, is a subsidiary of Plaintiff in this matter, Joseph Jingoli & Son, Inc. ("Jingoli"). *Id.* ¶ 12. Plaintiff operates within several different industries, to include power and energy. *Id.* ¶ 11. JPOW engages in the business of assisting "clients with complex electrical transmission, distribution/substation projects, and programs." *Id.* ¶ 12.

At its formation, Defendant Beal was the managing member of AVIVV, owning a 51% interest, while JPOW owned the remaining 49%. *Id.* ¶ 16. On June 16, 2023, as a result of Defendant's alleged breach of AVIVV's Operating Agreement, JPOW "filed a Demand for Arbitration . . . against Beal before the American Arbitration Association to resolve" Defendant's alleged breaches. *Id.* ¶¶ 19-21. JPOW sought to "settle distributions to be made under the AVIVV Operating Agreement, wind down the affairs of AVIVV, and dissolve AVIVV" in the arbitration. *Id.* ¶ 21 & Ex. 1 (Demand for Arb.).

B. **The Defamatory Emails**

Shortly after Defendant and JPOW entered arbitration, Plaintiff alleges that Defendant "began making false, misleading and unsubstantiated claims against Jingoli and JPOW executives,

2

including but not limited to JPOW's CEO, Karl Miller." *Id.* ¶ 22.  On June 27, 2023, Defendant allegedly "sent correspondence to Jingoli and JPOW executives" alleging that Jingoli and JPOW engaged in "bullying, retaliation, fraud, discrimination, victimization, harassment, threats, coercion, and debt bondage." *Id.* ¶ 23.  Defendant allegedly sent the same correspondence to other non-parties, such as the Military Chamber of Commerce, the Women's Business Enterprise Counsel, the California Public Utilities Commission, and the Western Regional Minority Supplier Development Council.  *Id.*

On June 28, 2023, non-party JPOW responded to the allegations, denying the claims made against it and its executives.  *Id.* ¶ 24.  The following day, on June 29, 2023, counsel for JPOW contacted Defendant's counsel and "demand[ed] that Beal cease and desist from making further defamatory comments."  *Id.* ¶ 25.  Defendant again allegedly sent correspondence reiterating her claims to JPOW, Plaintiff, and other non-party entities.  *Id.* ¶ 26.

On August 8, 2023, Defendant filed a request for a Temporary Restraining Order ("TRO") against JPOW CEO Karl Miller with the California Superior Court, San Diego County.  *Id.* ¶ 29.  Defendant "voluntarily dismissed" her request for a TRO on October 26, 2023.  *Id.* ¶ 32.  Defendant also filed a lawsuit against JPOW CEO Karl Miller and Plaintiff's counsel, Eckert Seamans Cherin & Mallot, LLC ("Eckert"), in the California Superior Court, San Diego County, asserting, among other things, claims for sexual harassment, retaliation, and fraud against JPOW and CEO Karl Miller.  *Id.* ¶ 33.

### C. The Cox and Google Subpoenas

The current Motion arises out of events that coincide with and follow shortly after the commencement of the AVIVV Arbitration and the court proceedings in California.  On October 7, 2023, Plaintiff alleges that Defendant and Defendant's mother, Maria Dolores Merrell, "acted in concert and caused two e-mails to be sent to clients and/or business partners of Jingoli . . . from an

3

anonymous e-mail address" identified as justice4womenofcolor@gmail.com. *Id.* ¶ 42. According to Plaintiff, Defendant and Merrell allegedly attached an "unconfirmed" copy of Defendant's Complaint filed in the California Superior Court, San Diego County and entitled the email "Billion Dollar NJ Contractor exploits Diversity & Inclusion Program." *Id.* ¶ 43. The second email, sent the same day, had Defendant's TRO application against Karl Miller attached to it, and the document was entitled "Sexual Harassment Lawsuit Explotation [sic] of Minority Women." *Id.* Plaintiff forensically traced the emails as being sent from IP Address 72.220.140.190 from Cox Cable Service. Pl.'s Opp. at 9-10. Further, Plaintiff ascertained that the email address did not belong to any business organization and was unable to identify any organization named "Justice 4 Women of Color." *Id.* at 10.

On November 16, 2023, Plaintiff issued subpoenas to Cox Communications, Inc. ("Cox") and Google, LLC ("Google") to produce subscriber information and documents related to justice4womenofcolor@gmail.com that were sent to or from the designated IP address and the email address on October 7, 2023, at 5:01 PM PST. *See* ECF No. 59-2, Certification of Karlee M. Martin ("Martin Certif."). Ex. 4 at 66-80 (Subpoenas).[2] On the same day, Plaintiff provided notice to Defendant's then-counsel regarding the subpoenas. *See id.* at 65, 73. According to Plaintiff, the information produced by Cox and Google confirmed that the email address and the IP address used to send the emails belonged to Defendant Beal. Am. Compl. ¶¶ 56-57. Plaintiff's investigation also linked Defendant's personal e-mail address as the recovery email address for justice4womenofcolor@gmail.com. *Id.* ¶ 57. The return date for the subpoenas was November 30, 2023. *See* Martin Certif., Ex. 4 at 66, 74. Defendant's counsel did not object to the subpoenas or file any motions to quash on Defendant's behalf. Pl.'s Opp. at 12.

---

[2] The Court refers to the ECF-generated page numbers for the exhibits to the Martin Certification because the exhibits are not paginated sequentially.

On April 19, 2024, Defendant filed a declaration from her mother, Merrell, in which Merrell stated that she was the creator of the justice4womenofcolor@gmail.com email address and sent the October 7, 2023 emails. Am. Compl. ¶¶ 60-61. As a result, Plaintiff amended its complaint to include Merrell as a co-defendant. *See generally* Am. Compl.

On August 8, 2024, Defendant Beal, proceeding *pro se* in this litigation, filed the present Motion to quash the subpoenas, to exclude the information produced from those subpoenas, to disqualify Plaintiff's counsel, and to seek sanctions against Eckert. Def.'s Motion at 1. Defendant alleges that Plaintiff's counsel, Robert P. Zoller, Esquire, "conducted discovery without Ms. Beal's consent" when Plaintiff issued the two subpoenas to Cox and Google. ECF No. 57-1 ("Def.'s Brief") at 1. Defendant further alleges that Plaintiff's counsel "falsely claimed that Ms. Beal had given consent and was aware of the subpoenas." *Id.* at 2. According to Defendant, the document production for the Cox subpoena was accompanied by language from Cox stating that "[t]he information provided by Cox systems of records is maintained for its business purposes and not for law enforcement or litigation matters." *Id.* at 3.

Defendant also claims that Plaintiff's counsel "collud[ed] with other attorneys to share the evidence obtained from these unauthorized subpoenas in multiple cases across the United States," arguing that this conduct was demonstrative of "a pattern of unethical conduct and disregard for legal standards across jurisdictions." *Id.* at 4. Similarly, Defendant alleges that Plaintiff's counsel is also involved in the filing of several lawsuits against her, which she asserts are "identical claims in different jurisdictions" to include New Jersey, California, and Texas. *Id.* at 5. Defendant further contends that JPOW and Jingoli are the "same entity," and that Plaintiff's denial of such is "misleading and undermine[s] the integrity of the court." *Id.* Finally, Defendant requests that the Court disqualify Plaintiff's counsel, Eckert, and specifically Attorney Zoller due to a conflict of

interest, *id.* at 15-19, and impose sanctions for alleged wrongful conduct by Plaintiff's counsel, *id.* at 11, 23.

On September 3, 2024, Plaintiff filed opposition to the Motion. ECF No. 59, Pl.'s Opp. Plaintiff argues that Defendant's Motion is untimely, *id.* at 19-21; Defendant fails to meet her burden to quash the Cox and Google subpoenas, *id.* at 16-19; and that Defendant lacks standing to quash the subpoenas, *id.* at 21-22. Further, Plaintiff argues that the Rules of Professional Conduct do not warrant Plaintiff's counsel's disqualification in this matter. *Id.* at 22-29. Finally, Plaintiff argues that sanctions are inappropriate. *Id.* at 29-31.

On September 9, 2024, Defendant filed a reply in support of her Motion. ECF No. 60, Def.'s Reply. On November 4, 2024, while the Court was reviewing the parties' submissions, Defendant filed a request seeking leave of Court to file a sur-reply in support of her pending motions. ECF No. 89, Def.'s Sur-Reply.

## DISCUSSION

Defendant raises multiple allegations in her Motion,[3] many of which involve matters outside the purview of this litigation. The Court will address only the relief sought by Defendant as to the following: (1) quashing the subpoenas and/or excluding evidence resulting from those subpoenas; (2) seeking disqualification of Plaintiff's counsel; and (3) imposing sanctions on Plaintiff's counsel.

### A. Motion to Quash Subpoenas and/or Exclude Evidence Obtained

Defendant first seeks to quash the subpoenas to Cox and Google and/or to exclude any

---

[3] Defendant's other arguments allege "use of illegally obtained evidence in other jurisdictions," "filing frivolous and duplicative lawsuits," "perjury and misrepresentation to the Court," "retaliatory amendment to add a party to the Complaint," "failure to resolve dispute," "unauthorized removal from banking and financial management," "filing false criminal charges and manipulating the justice system," and "concerns regarding intimidation and influence." Def.'s Motion at i.

6

evidence obtained from those subpoenas. In response, Plaintiff asserts that the motion is untimely and, notwithstanding, the information produced pursuant to the subpoenas is not privileged or otherwise protected.[4]

Federal Rule of Civil Procedure 45 establishes the rules for discovery directed to individuals and entities that are not parties to the underlying lawsuit. Fed. R. Civ. P. 45. When a party serves a subpoena under Federal Rule of Civil Procedure 45, the information and documents sought must fall within the scope of proper discovery under Rule 26(b)(1). *In re Novo Nordisk Sec. Litig.*, 530 F. Supp. 3d 495, 501 (D.N.J. 2021). Rule 26 provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "'Rule 26 [clearly] establishes a liberal discovery policy' and '[t]he federal courts have . . . long permitted broad and liberal discovery.'" *Khal Anshei Tallymawr Inc. v. Twp. of Toms River*, Nos. 21-2716, 23-3239, 2024 WL 3728069, at *3 (D.N.J. Aug. 8, 2024) (internal citations and quotations omitted). However, the scope of discovery "is not unlimited . . . and should not serve as a fishing expedition." *Burgess v. Galloway*, No. 20-6744, 2021 WL 2661290, at *2 (D.N.J. Jan. 28, 2021) (quotation and internal quotation marks omitted).

Federal Rule of Civil Procedure 45(d)(3)(A) provides for when a court must quash a subpoena.

> On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
> (i)   fails to allow a reasonable time to comply;
> (ii)  requires a person to comply beyond the geographical limits

---

[4] Plaintiff also argues that Defendant lacks standing to quash the subpoenas. Because resolution of Plaintiff's other arguments disposes the matter, the Court need not address standing.

>   specified in Rule 45(c);
> (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
> (iv) subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A)(i-iv).

Given these standards, the Court finds that Plaintiff's Motion to quash the Cox and Google subpoenas must be denied. Primarily, the Motion is untimely. A motion is timely if it is made within the time for which a party must comply with a subpoena. *Khal Anshei Tallymawr Inc.*, 2024 WL 3728069 at *5 (quotation omitted). Defendant served the subpoenas in question on Cox and Google on November 16, 2023, with a return date of November 30, 2023. *See* Martin Certif., Ex. 4 at 66, 74. Defendant had two weeks during which she could have filed an objection to the subpoenas or a motion to quash. She failed to do so for nine months. At this juncture, the information has already been produced to and used by Plaintiff.

Moreover, the Court is unpersuaded by Defendant's argument that she did not have proper notice of the subpoena. When a party issues a subpoena on a non-party, the party seeking the discovery must provide "prior notice to all parties to the litigation." *Coleman-Hill v. Governor Mifflin Sch. Dist.*, 271 F.R.D. 549, 552 (E.D. Pa. 2010). Under Federal Rule of Civil Procedure 5(b), service of the notice can be made on the opposing party's attorney. *McCurdy v. Wedgewood Cap. Mgmt. Co.*, No. 97-4304, 1998 WL 964185, at *6 (E.D. Pa. Nov. 16, 1998). If an opposing party is not provided notice prior to service of a subpoena on a non-party but still has "notice and sufficient time to object, they are not prejudiced." *Id.* at *7.

Here, Plaintiff served notice of the subpoenas on Defendant's then-counsel before serving the subpoenas on Cox and Google. Pl.'s Opp. at 12; *see also* Martin Certif., Ex. 4 at 73. Defendant's argument that her attorneys did not inform her about the subpoenas does not undermine the propriety of the notice. Def.'s Reply at 1. The Court will not quash the subpoenas or exclude evidence based

8

on any alleged oversight or inaction of Defendant's prior counsel.

Finally, even assuming the current motion was timely, Defendant has failed to articulate any legitimate ground of privilege to avoid disclosure of the information subpoenaed. Although as a general rule people have a "legitimate privacy interest in their online activity," *Strike 3 Holdings, LLC. v. Doe*, No. 18-12585, 2020 WL 3567282, at *10 (D.N.J. June 30, 2020), that privacy interest cannot serve as "a shield behind which internet users can commit unabated, legally actionable behavior." *Id.* (citing *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 119 (2d Cir. 2010)). Where a subpoena seeks subscriber information such as real names and physical addresses associated with an IP address, such information is not protected by a privilege. *See Baseprotect USA, Inc. v. Swarm # 06159132D21BBC88ED40B6E51278879F25243F*, No. 11-7288, 2012 WL 13032936, at *3 (D.N.J. Oct. 18, 2012) (holding that no privilege attached to IP addresses obtained pursuant to a subpoena for the purpose of identifying the "names and physical addresses only" of the IP addresses); *see also U.S. v. Christie*, 624 F.3d 558, 574 (3d Cir. 2010) (stating that "no reasonable expectation of privacy exists in an IP address, because that information is also conveyed to and, indeed, from third parties, including ISPs").

Here, Defendant does not have a reasonable expectation of privacy in her subscriber information associated with her IP Address. Contrary to Defendant's argument, *see* Def.'s Reply at 3, the Stored Communications Act, 18 U.S.C. § 2701, does not codify a legitimate privacy interest in subscriber information associated with a person's IP address or email address. Additionally, Defendant has no support for her allegation that Plaintiff's extraction of her IP Address from the metadata in the headers of the emails sent from justice4womenofcolor@gmail.com constitutes an unlawful acquisition of personal information, particularly since that information was included in the metadata of the email Plaintiff herself sent. *See* Def.'s Reply at 11. Finally, Defendant's reference to the Cox and Google policies regarding the use of information produced pursuant to the subpoenas

9

is unpersuasive, *see id.* at 3, as none of those policies creates a privacy interest on which Defendant can rely to quash the subpoenas.

For these reasons, Defendant's Motion to quash the subpoenas is denied.

### B.     Motion to Disqualify Counsel

Defendant next seeks to disqualify Plaintiff's counsel. The disqualification of counsel is an "intensely fact-specific" question and must be "'approach[ed] . . . with a keen sense of practicality as well as a precise picture of the underlying facts.'" *Irene Schneider Family Tr. v. PNC Bank, N.A.*, No. 23-3146, 2024 WL 712562, at *2 (D.N.J. Feb. 20, 2024) (quotation omitted). "'The district court's power to disqualify an attorney derives from its inherent authority to supervise the professional conduct of attorneys appearing before it.'" *Jonathan v. Cnty. of Cape May*, No. 18-12918, 2020 WL 205901, at *7 (D.N.J. Jan. 13, 2020) (quoting *U.S. v. Miller* 624 F.2d 1198, 1201 (3d Cir. 1980)). The decision to disqualify an attorney is left to the "'sound discretion of the district court.'" *Id.* (quoting *Miller*, 624 F.2d at 1201).

In the District of New Jersey, attorney ethics are governed by Local Civil Rule 103.1. In particular, Local Civil Rule 103.1(a) states that "the conduct of the members of the bar admitted to practice in this Court," are governed by the "Rules of Professional Conduct of the American Bar Association as modified by the New Jersey Supreme Court."[5] *See Irene Schneider Family Tr.*, 2024 WL 712562, at *2. "'[A] party seeking to disqualify counsel carries a heavy burden and must satisfy a high standard of proof.'" *Fragoso v. Zhejun Piao*, 433 F. Supp. 3d 623, 627 (D.N.J. 2019) (quoting *Essex Chem. Corp. v. Hartford Accident & Indem. Co.*, 993 F. Supp. 241, 246 (D.N.J. 1998)). Further, "an appearance of impropriety must be something more than a fanciful possibility and must

---

[5] The New Jersey Rules of Professional Conduct ("RPC") are available at https://www.njcourts.gov/sites/default/files/rpc.pdf (last visited Mar. 4, 2025), *archived at* https://perma.cc/2QD6-H2RT.

have some reasonable basis." *In re Cendant Corp. Sec. Litig.*, 124 F. Supp. 2d 235, 246 (D.N.J. 2001) (cleaned up).

Here, Defendant argues that Plaintiff's counsel "previously represented [her] and her company, AVIVV, from 2021 until the end of 2022." Def.'s Brief at 15. RPC 1.9, which governs conflicts of interest between an attorney and former clients, states: "A lawyer who has represented a client in a matter shall not thereafter represent another client in the same or a substantially related matter in which that client's interests are materially adverse to the interests of the former client . . . ." RPC 1.9(a). A matter is substantially related if:

> (1) the lawyer for whom disqualification is sought received confidential information from the former client that can be used against that client in the subsequent representation of parties adverse to the former client, or (2) facts relevant to the prior representation are both relevant and material to the subsequent representation.

*City of Atl. City v. Trupos*, 201 N.J. 447, 467 (2010).

Before a court can consider disqualification on these bases, however, a prior or current attorney-client relationship must exist. *See Killion v. Coffey*, No. 13-1808, 2014 WL 2931327, at *4 (D.N.J. June 30, 2014) (noting that before the Model Rules can be applied and disqualification considered, "an attorney-client relationship had to exist"). An attorney-client relationship can be explicit or implied. *Id.* An explicit attorney-client relationship is formed when a person manifests their intent to have the lawyer provide her legal services and the lawyer consents. *Speeney v. Rutgers*, 673 F. App'x 149, 153 (3d Cir. 2016) (citation omitted). An implied attorney-client relationship is formed when a person manifests the same, and the lawyer "'fails to manifest lack of consent to do so, and the lawyer knows or reasonably should know that the person reasonably relies on the lawyer to provide the services.' *Id.* (quoting *Dixon Ticonderoga Co. v. Estate of O'Connor*, 248 F.3d 151, 169 (3d Cir. 2001)). Under RPC 1.13(a), "a lawyer employed or retained to represent

11

an organization represents the organization as distinct from its directors, officers, employees, members, shareholders or other constituents."

### 1. Former Client Relationship

Applying these principles to the facts presented by the parties, the Court finds that disqualification of Plaintiff's counsel is not appropriate because no explicit or implied attorney-client relationship existed between Plaintiff's counsel and Defendant Beal. The engagement letter between AVIVV and Eckert disposes of the question entirely. The Terms of Engagement for the letter states in relevant part that, "if you are a corporation or partnership, we do not represent . . . your officers, directors, shareholders, employees, partners, or agents, unless specified as a Client." Martin Certif., Ex. 1(A) at 30 (Terms of Engagement). Although the body of the letter to Defendant transmitting Eckert's Terms of Engagement states, "[w]e want to make it clear that Eckert is representing you in this engagement," the letter further clarifies that Eckert's "engagement is to provide legal representation to AVIVV, LLC in relation to a trademark filing. Our acceptance of this engagement does not involve an undertaking to represent you or your interests in any other matter other than described above." *Id.* at 27. Nothing in the transmittal letter or the Terms of Engagement suggests that Eckert had formed an attorney-client relationship with Defendant Beal as an individual.

Nor has Defendant provided a factual basis to suggest that an implied attorney-client relationship existed. The engagement letter between Eckert and AVIVV limited the firm's representation to the trademark filing. While Eckert extended the courtesy of offering to assist AVIVV or any other party not then represented with other legal matters, nothing in the record shows that Defendant took advantage of that offer. *See id.* ("In the event a need arises for Eckert to represent you in respect to another matter or legal issue, I would be pleased to discuss it with you.").

Finally, Eckert's prior representation of AVIVV in a trademark matter is not substantially related to its representation of Plaintiff in a defamation suit. Although Defendant alleges that Eckert had access to confidential information including "business strategies, financial data, and internal communications that are critical to the defense of this case," Def.'s Brief at 15-16, the record does not show that Eckert had access to AVIVV or Beal's confidential records that would be of any relevance in the defamation suit before this Court. See ECF No. 59-2, Certification of Linda J. McGuinness at 53-55 ("Ms. Beal never disclosed any confidential information to me"; "any conversation I had with Ms. Beal was solely about AVIVV's trademark applications").

Therefore, the Court finds that no former attorney-client relationship exists between Plaintiff's counsel, and thus, the Court denies Defendant's requested relief.

### 2. Current Client Relationship

In her sur-reply, Defendant raises for the first time that a current client relationship exists between her and Plaintiff's counsel. See Def.'s Sur-Reply at 2. Defendant provided the Court with a letter dated November 2, 2024, sent to Plaintiff's counsel from her attorney in the AVIVV Arbitration, M. Cris Armenta, Esquire. According to the letter, Ms. Armenta "discovered that, contrary to statements made in the Opposition, [Plaintiff's counsel] is *presently* counsel of record to AVIVV, LLC, the entity of which Defendant Beal is the Chief Executive Officer." *Id.* (emphasis in original). Ms. Armenta demanded that Plaintiff's counsel withdraw from both this matter and the arbitration based on the understanding that Plaintiff's counsel still represented AVIVV before the USPTO. See ECF No. 89-1, Declaration of Erica Beal ¶ 2 and Ex. 1 (Letter). On February 20, 2025, in response to an inquiry by the Court, Plaintiff filed a copy of its letter response to Ms. Armenta's November 2, 2024 letter. See ECF No. 116.

After reviewing Defendant's sur-reply and Plaintiff's letter, the Court concludes that no current attorney-client relationship exists between Plaintiff's counsel and Defendant Beal. Again,

13

AVIVV's Terms of Engagement disposes of this question entirely. Nothing in the proposed sur-reply demonstrates that Plaintiff's counsel ever agreed to act as Defendant's legal counsel in her individual capacity. As Plaintiff indicates, Defendant Beal sent an email to various AVIVV executives on November 23, 2022, stating that any further services from Plaintiff's counsel to AVIVV related to trademark proceedings before the USPTO should be terminated and that AVIVV would compensate counsel for any previous services rendered. *See* ECF No. 116-1, Exs. to Pl.'s Letter at 4 (Email).

Defendant's sur-reply does not demonstrate that she is a current client of Plaintiff's counsel. Therefore, the Court will not disqualify Plaintiff's counsel. The Court also denies Plaintiff's request for alternative relief; that is, disqualifying Mr. Zoller specifically from representing his client.[6]

---

[6] On February 17, 2025, Defendant sought leave of Court to file another supplement in support of her Motion and she attached the supplement to her request. *See* ECF No. 115. Before the Court had an opportunity to consider the request, Defendant filed a second supplement without leave of Court. *See* ECF No. 118. The Court will not tolerate this type of litigation behavior going forward. Despite *pro se* status, a litigant must abide by the procedural rules of this Court. Before Defendant files any other motion papers in this matter, **she must seek leave of Court in advance**.

Notwithstanding, the Court reviewed the supplements and finds that they do not change the Court's analysis. The supplements do not demonstrate that Defendant is a current client of Plaintiff's counsel. The supplements contain two declarations from Defendant's counsel in the AVIVV Arbitration, M. Cris Armenta, Esquire and exhibits consisting of email correspondence between Ms. Armenta and Plaintiff's counsel and a printout of a page from the USPTO's website listing information for the AVIVV trademark. *See generally* ECF No. 118, Exs. A-C. As a preliminary matter, Ms. Armenta's declarations appear to make factual and legal arguments on Defendant's behalf in this matter despite her not having entered an appearance in this matter on Defendant's behalf. Furthermore, nothing in the declaration or the attached exhibits changes the fact that the Terms of Engagement noted that Plaintiff's counsel's representation of AVIVV did not include AVIVV's members. *See* Martin Certif., Ex. 1(A) at 30. Nor did the Engagement Letter specify that Plaintiff's counsel was representing Defendant Beal in her individual capacity. *See id.* at 27 ("Our engagement is to provide legal representation to AVIVV, LLC in relation to a trademark filing. Our acceptance of this engagement does not involve an undertaking to represent you or your interests in any matter other than described above.").

### C.     Motion for Sanctions

Finally, Defendant seeks the imposition of sanctions on Plaintiff and its counsel.  A Court has the inherent power to impose sanctions to prevent abuses of the judicial process.  *Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc.*, 57 F.3d 1215, 1224 (3d Cir. 1995).  These powers, however, must be exercised "with restraint and discretion."  *Chambers v. NASCO*, 501 U.S. 32, 44 (1991).  The Court's inherent power to sanction an attorney [is] governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."  *Eash v. Riggins Trucking Inc.*, 757 F.2d 557, 567 (3d Cir. 1985) (cleaned up).

 Whether under the Federal Rules or its inherent powers, a Court's decision to impose sanctions should be "guided by the same considerations" which include the conduct at issue, whether the offending party is the attorney or the client, and other mitigating factors as well.  *See Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 74 (3d Cir. 1994).

Nothing in the record justifies imposing sanctions on Plaintiff's counsel.  Defendant alleges, among other things, that Plaintiff's counsel has filed frivolous and duplicative lawsuits, Def.'s Brief at 5; "manipulated the criminal justice system," *id.* at 14; and "lied under oath," *id.* at 8.  The Court cannot rule on the merits of or pass any judgment on the alleged frivolousness of any other litigation that Plaintiff or Plaintiff's counsel has initiated against Defendant in other jurisdictions.  Moreover, the Court is not in a position to assess the legitimacy of any criminal charges that Plaintiff may have pressed or filed against Defendant in another jurisdiction.  Finally, the Court will not entertain allegations that an attorney before it is lying under oath without any evidence to support such an accusation.  Standing alone, Defendant's allegations against Eckert and Mr. Zoller are not corroborated by any evidence of record.  Therefore, Defendant's Motion to impose sanctions against Plaintiff's counsel is denied without prejudice.

## CONCLUSION

For the foregoing reasons, Defendant's Motion is **DENIED WITHOUT PREJUDICE** in its entirety. An appropriate Order will issue.

s/Elizabeth A. Pascal
ELIZABETH A. PASCAL
United States Magistrate Judge

cc: Hon. Edward S. Kiel, U.S.D.J.